**\*\*NOT FOR PUBLICATION\*\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| | : | |
| LMT MERCER GROUP, INC., | : | |
| | : | Civ. Nos. 10-4615, 10-6699 (FLW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MAINE ORNAMENTAL, LLC *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

Before the Court are several motions for partial summary judgment in this patent infringement case brought by Plaintiff LMT Mercer Group, Inc. ("LMT"). Defendants Home Tops, LLC ("Home Tops") and Maine Ornamental, LLC, Universal Consumer Products, Inc., and Universal Forest Products, Inc. (collectively "Maine") (collectively, "Defendants") have each filed a motion for partial summary judgment based on the statutory defense of intervening rights. Home Tops has also filed a motion for partial summary judgment arguing that LMT waived its infringement contentions with respect to a specific Home Tops' product. Lastly, LMT has filed a motion for leave to further supplement its infringement contentions. After reviewing the parties' briefing and the record in this patent case, for the following reasons, the Court GRANTS Home Tops and Maine's motions for partial summary judgment on the issue of intervening rights. The Court DENIES Home Tops' motion for summary judgment on the issue of waiver and GRANTS LMT's motion for leave to further supplement its infringement contentions.

1

# I.    BACKGROUND

The patent that is the subject of this litigation, U.S. Patent No. 6,722,637 (the "'637 Patent"), was originally filed by Patentees Michael Burkhart and Jeffery Herion on October 10, 2001, and later was assigned first to Stallion Fence Accessories, Denver, Colorado, and presently to LMT.   As explained in more detail in my concurrently filed *Markman* claim construction Opinion, the '637 Patent claims a fence post apparatus for synthetic fence posts, and more specifically, an apparatus to be attached to the top end of a synthetic fence post that may include a light emanating device (the "post cap").   During the *Markman* proceeding, the parties focused on 10 disputed claim terms or phrases requiring construction, including those relating the way the post cap attached to the fence post.

The patentees were awarded their patent on April, 20, 2004, with the patent now held by LMT.   Claiming infringement upon the patent, LMT filed suit against Maine in September 2010, *see* Civ. No. 10-4615(FLW), Home Tops in December 2010, *see* Civ. No. 10-6699(FLW), and McFarland Holdings, LLC in January 2011 ("McFarland").   *See* Civ. No. 10-0539(FLW). Before any meaningful motion practice or discovery, Maine Ornamental initiated *ex parte* reexamination proceedings of the '637 Patent before the United States Patent and Trademark Office ("USPTO") on March 9, 2011.   Pending reexamination, LMT's infringement suits were stayed as to each of the three Defendants.   On August 28, 2012, the USPTO issued a reexamination certificate.   Thereafter, on September 25, 2012, the stays were lifted, and on December 7, 2012, the three LMT actions against Maine, Home Tops, and McFarland were consolidated for pretrial purposes, including claim construction.   On October 11, 2013, a Stipulation and Order of Dismissal with Prejudice was entered for LMT's claims against McFarland.   *See* Civ. No. 11-0539(FLW), Dkt. No. 42.   Maine and Home Tops filed *Markman*

briefs, the Court held a *Markman* hearing on December 4, 2012, and on January 16, 2014, concurrent with the instant Opinion, the Court issued its decision construing the 10 disputed claim terms.

Around the time of the commencement of the *Markman* phase of the litigation, Maine and Home Tops filed motions for partial summary judgment on the issue of intervening rights on July 3, 2013 and July 23, 2013, respectively, and Home Tops filed a motion for partial summary judgment on the issue of waiver on June 17, 2013. LMT has filed briefs opposing each of these motions. Also, on July 22, 2013, LMT filed a motion for leave to further supplement its infringement contentions against Home Tops, which Home Tops has opposed. These and additional facts will be set forth in more detail as necessary.

## II.    STANDARD OF REVIEW

A moving party is entitled to judgment as a matter of law where there is no genuine issue as to any material fact. *See* Fed R. Civ. P. 56(c); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). The burden of demonstrating the absence of a genuine issue of material fact falls on the moving party. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 305 (3d Cir. 1999). Once the moving party has satisfied this initial burden, the opposing party must identify "specific facts which demonstrate that there exists a genuine issue for trial." *Orson*, 79 F.3d at 1366.

Not every issue of fact will be sufficient to defeat a motion for summary judgment; issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, the nonmoving party cannot rest upon mere allegations; he must present actual evidence that creates

a genuine issue of material fact. *See* Fed R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249 (citing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). In conducting a review of the facts, the non-moving party is entitled to all reasonable inferences and the record is construed in the light most favorable to that party. *See Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). Accordingly, it is not the Court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party. *See Brooks*, 204 F.3d at 105 n.5 (citing *Anderson*, 477 U.S. at 249); *Big Apple BMW v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. DISCUSSION

### A. Home Tops' Waiver Motion

Home Tops moves for partial summary judgment on the narrow issue of whether LMT has a viable claim of infringement against Home Tops' Solar Polaris Deck Light product (the "Polaris Light"). In support of its motion, Home Tops recites the following procedural history and facts attending the instant litigation, which are undisputed on this motion for summary judgment unless otherwise noted.

On December, 22 2010, LMT filed its patent infringement complaint against Home Tops, specifically identifying the Polaris Light as one of the products accused of infringing the '637 Patent. *See* Complaint ¶ 10. As required by Local Patent Rule 3.1,[1] LMT then served its

---

[1] In accordance with Local Patent Rule 3.1, a patent holder must serve on the alleged infringer a "Disclosure of Asserted Claims and Infringement Contentions" within 14 days of the initial scheduling conference. These infringement contentions must contain:

> (1) each claim of each patent in suit that is allegedly infringed; (2) identification of defendant's "Accused Instrumentality"; (3) a chart identifying where each limitation of each asserted claim is found in each "Accused Instrumentality"; (4) whether the alleged infringement is literal or under the doctrine of equivalents; (5)

Disclosure of Asserted Claims and Infringement Contentions ("Original Disclosure") on Home Tops on December 14, 2012, which also included a claim chart that identified the Polaris Light as one of the Accused Instrumentalities of Defendant Home Tops for Claims 11, 12, 15, 16, 20, 21, and 23 of the '637 Patent. Subsequently, LMT served Home Tops with a Supplemental Disclosure of Asserted Claims and Infringement Contentions ("First Supplemental Disclosure") on January 29, 2013. *See* Dkt. No. 62-6. In the First Supplemental Disclosure, LMT stated that: "The Supplemental Infringement Contentions are herein supplemented at the request of Defendant, and hereby supersedes the Infringement Contentions." *See id.* The First Supplemental Disclosure identified almost all of the same products as the Original Disclosure, but did not identify the Polaris Light as one of Home Tops' Accused Instrumentalities.

At this point, the parties consented to and entered into court-ordered mediation. *See* Dkt. No. 51. According to the parties' briefing, during the mediation period, LMT sought to further amend its infringement contentions, and during discussions with Home Tops, it was made clear that Home Tops would not consent to any amendment that, *inter alia*, would again include the Polaris Light product. In any event, LMT subsequently moved on March 8, 2013 for leave to supplement its infringement contentions without including the Polar Light as one of the Accused Instrumentalities ("Second Supplemental Disclosure").[2] *See* Dkt. No 38. Home

---

the priority date to which each asserted claim allegedly is entitled; and (6) the basis for any willful infringement claims.

L. Pat. R 3.1

[2] According to LMT's March 8, 2013 motion:

LMT intends to supplement its Infringement Contentions to specify the following products: Square Copper Solar Light, Square Solarband Light, Solar Post Cap Light, Solar Accent Light, Solar Copper Light, Pentwater Solar Post Cap (translucent lens), and Dynasty Solar Post Cap. These products are identical or

Tops did not oppose this motion, which was granted by the magistrate judge on August 2, 2013. *See* Dkt. No. 49.

According to LMT, around the time of the filing of the March 8, 2013 motion, but prior to the opening of the fact-discovery period, LMT was in the process of investigating whether another solar lamp post cap product, called Magena Star, which LMT understood to be similar or identical to the Polaris Light, was being manufactured by Home Tops and/or distributed for sale by a third party after being constructed from the Polaris Light. *See* Decl. of Christopher R. Kinkade, Esq., dated July 22, 2013 ("Kinkade Decl."), ¶¶ 3-10.[3] After discussed with this Home Tops regarding the Magena Star product, and after receiving and reviewing the Magena Star product in mid-March 2013, LMT communicated to Home Tops its belief that the Magena Star product was infringing on the '637. *Id.* On March 21, 2013, Home Tops served its responsive invalidity and non-Infringement Contentions, without explicit reference to the Polaris Light or Magena Star. With the March 8 motion still pending, on June 17, 2013, Home Tops filed the instant motion for partial summary judgment on the issue of waiver, and on July 22, 2013, LMT filed a motion for leave to file amended infringement contentions against Home Tops to include the Polaris Light, Magena Star, and similar products.

On the basis of these facts and procedural posture, Home Tops argues that partial

---

substantially similar to the products that were listed in the Infringement Contentions under the manufacture's nomenclature. LMT also intends to specify that the previously identified "tiffany-style" caps include the Northwoods Solar Light, Jade Solar Light, Sunflower Solar Light, California Grape Solar Light, and Mission Solar Light. Therefore, the proposed amendment to the Infringement Contentions is no more than a clarifying amendment.

*See* Dkt. No. 38.

[3] The Kinkade Decl. is attached to LMT's Motion in Support of Plaintiff's Opposition to Defendant Home Tops, LLC's Motion for Partial Summary Judgment. *See* Dkt. No. 72.

summary judgment in its favor is appropriate on the ground that LMT has waived any contention that the Polaris Light or similar product infringes on the '637 Patent. Specifically, Home Tops contends there is no genuine issue of material fact regarding LMT's failure to include the Polaris Light in its infringement contentions, and that under the "law of waiver," LMT's failure to include such a product in its latest infringement contentions constitutes a waiver of LMT's right to bring any future infringement contentions based on that product. *See* Home Tops Waiver Br., Dkt. No. 62, 9-10. LMT opposes Home Tops' motion on the bases that (1) there are genuine issues of material disputed fact regarding LMT's intent to include/not include the Polaris Light in its infringement contentions; (2) Home Tops relies on incorrect law regarding waiver; and (3) Home Tops' motion is not readily susceptible to summary judgment and its arguments are more appropriately addressed in the context of LMT's pending motion to further supplement its infringement contentions.

Home Tops cites no case law or other authority, including the Local Patent Rules, showing that a party may move for summary judgment on a claim that a patent holder waived its ability to bring infringement contentions. Rather, Home Tops relies on New Jersey state law discussing waiver generally as the "intentional relinquishment of a known right." *See* Home Tops Waiver Br., 9-10. It is entirely unclear to this Court why, in this patent infringement action, Home Tops grounds its argument in New Jersey state law. The Federal Circuit has made clear that its own law applies "to both substantive and procedural issues 'intimately involved in the substance of enforcement of the patent right.'" *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1363 (Fed. Cir. 2004) (quoting *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996); *see also Midwest Ind., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc) ("A procedural issue that is not itself a substantive patent

law issue is also governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to our exclusive control by statute, or if it clearly implicates the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction." (Internal quotation marks omitted.)). Certainly, the procedures involved in providing infringement contentions, which govern the scope of a party's substantive claim of infringement, are issues intimately involved in the enforcement of the patent right and thus are governed by Federal Circuit, not New Jersey, law. Moreover, even if this were not so, the identification of infringement contentions pursuant to L. Pat. R. 3.1 implicates federal procedure and would still be governed by federal, not state, law. *See Sulzer Textil A.G.*, *supra* at 1363 ("The Federal Circuit defers to regional circuit law when reviewing issues not unique to patent law."). Accordingly, I find that federal law applies. Having reviewed Federal Circuit case law and the law of this Court and other courts, I find no decision, published or unpublished, in which summary judgment was granted on the issue of waiver for a party's failure to include an accused product in one of its infringement contentions.[4]

Although this dearth of authority does not necessarily foreclose Home Tops' motion, I agree with LMT that the question of waiver requires a finding of LMT's intent. *See, e.g.*, *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004) ("[W]aiver is the *intentional* relinquishment or abandonment of a known right." (Emphasis added.)). Here, LMT vigorously disputes that it intended to waive any claim of infringement with respect to the Polaris Light or similar product,

---

[4] In that regard, I note that Home Tops relies on L. Pat. R. 3.1 to support its waiver argument. Nothing in that rule, or otherwise cited by Home Tops, requires a party to include all infringement contentions in all of its disclosures, or prevents a party from (re)asserting an infringement contention that was previously not asserted. Indeed, L. Pat. R. 3.7 explicitly provides that a party may timely amend its contentions with the leave of court under a showing of "good cause."

relying in part on the fact that discovery is ongoing and that LMT has filed another motion for leave to amend its infringement contention arising out of the its investigation of the Magena Star product. These disputed facts, which are material to Home Tops' motion, are sufficient to defeat summary judgment on the issue of LMT's intentional waiver.[5]  *See Celotex Corp.*, 477 U.S. at 323. Nor do I find it appropriate on these facts to impute a finding of waiver, which would run counter to the principle that on a motion for summary judgment, the non-moving party is entitled to all reasonable inferences and the record is construed in the light most favorable to that party.  *See id.* at 330 n.2; *cf. Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008) (noting that defense of inequitable conduct, like equitable estoppel, involve factual disputes that are not readily susceptible to summary judgment)..  Ultimately, I find that Home Tops' arguments are more appropriately addressed in the context of LMT's pending motion for leave to amend its infringement contentions to include the Polaris Light and Magena Star as accused instrumentalities.

**B.     LMT's Motion for Leave to Amend**

LMT moves for leave to further supplement its infringement contentions to include the Polaris Light, Magena Star, and other similar products. Based on largely the same facts as stated in LMT's opposition to Home Tops' partial motion for summary judgment on waiver, LMT argues that its proposed amendment is timely and supported by good cause. Home Tops opposes LMT's motion, arguing that it is untimely and prejudicial to Home Tops.

Local Patent Rule 3.7 governs the amendment of infringement contentions, and provides that leave to amend invalidity contentions may be granted "only by order of the Court upon a

---

[5]     For this reason, I do not reach LMT's argument in opposition that Home Tops' motion is most appropriately analyzed under an implied license theory.

timely application and showing of good cause." Rule 3.7 provides a nonexhaustive list of circumstances that may, absent undue prejudice to the adverse party, support a finding of good cause:

> (a) a claim construction by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material prior art despite earlier diligent search; (c) recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contention; . . . and (e) consent by the parties in interest to the amendment and a showing that it will not lead to an enlargement of time or impact other scheduled deadlines . . .

L. Pat. R. 3.7. In addition to the listed examples, courts have also considered other factors in determining whether good cause exists: (1) the reason for the delay, including whether it was within the reasonable control of the party responsible for it; (2) the importance of what is to be excluded; (3) the danger of unfair prejudice; and (4) the availability of a continuance and the potential impact of a delay on judicial proceedings. *See, e.g., Oy Ajat, Ltd. v. Vatech Am., Inc.*, 2012 WL 1067900, at *20-*21 (D.N.J. Mar. 29, 2012)

The Local Patent Rules are "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *TFH Publications, Inc. v. Doskocil Manufacturing, Co., Inc.*, 705 F. Supp. 2d 361, 365-66 (D.N.J. 2010) (citing *Atmel Corp. v. Info. Storage Devices, Inc.*, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998)). In that connection, and in contrast to the relatively liberal standard for amending pleadings in other civil matters, "the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *Id.* (quoting *Atmel Corp.*, 1998 WL 775115, at *2); *see also King Pharmaceuticals, Inc. v. Sandoz, Inc.*, 2010 WL 2015258, at *4 (D.N.J. May 20, 2010). That said, Rule 3.7 "is not a straightjacket into which litigants are locked from the moment their contentions are served."

*Comcast Cable Communs. Corp. v. Finisar Corp.*, 2007 WL 716131, at *2 (N.D. Cal. Mar. 2, 2007).

With regard to the "good cause" requirement of Rule 3.7, the Federal Circuit has stated that parties must "proceed with diligence in amending when new information comes to light in the course of discovery." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366-68 (Fed. Cir. 2006). The party seeking to amend bears the burden of establishing diligence. *Id.* at 1366; *Jazz Pharms., Inc.*, 2013 WL 785067, at *5. Moreover, a party must not only prove that it was diligent in seeking leave to amend, but also prove that it was diligent in discovering the basis for the proposed amendment. *Id.*

In determining whether an amendment should be granted, I follow a two-step approach outlined by the rule and adopted by other courts: first, I determine whether the party seeking to amend acted diligently in filing its motion; second, and only if I find diligence, I determine whether the non-moving party would suffer prejudice as a result of the amendment. *Jazz Pharms., Inc. v. Roxane Labs., Inc.*, Civ. No. 10-6108, 2013 WL 785067, at *5 (D.N.J. Feb 28, 2013); *see also Astrazeneca AB v. Dr. Reddy's Laboraties, Inc.*, Civ. No. 11-2317(JAP), 2013 WL 1145359, at *4 (D.N.J. Mar. 18, 2013) (denying motion to amend infringement contentions where moving party delayed seven months in seeking amendment); *Apple v. Samsung*, Civ. No. 11-CV-01846-LHK, 2012 WL 1067548, at *1-*2 (N.D. Cal. Mar. 27, 2012).

With respect to diligence, LMT contends that it acted in a reasonably prompt manner in filing its motion because it did not learn of, and was not able to investigate, the non-public information regarding the Magena Star product until March 2013—*i.e.*, before fact-discovery

had begun.[6]   LMT argues that filing its motion in July 2013, based on this investigation, should be considered a diligent effort, particularly in light of the fact that (1) settlement discussions and mediation were ongoing at this time, (2) LMT contacted Home Tops to let Home Tops know of LMT's position on the Magena Star, and (3) LMT's opposition to Home Tops' motion for partial summary judgment contained many of the same arguments it presents in connection with its motion for leave to amend.   Home Tops rejects each of these arguments, contending that the four-month span between when LMT investigated the Magena Star product and filed its motion cannot be considered diligent under these facts.[7]

As an initial matter, I note that LMT's arguments for good cause and diligence pertain only to the Magena Star product.   LMT offers no explanation for why it removed the Polaris Light product from its infringement contentions in the First Supplemental Disclosure in January 2013, or why, after discussions with Home Tops on the issue, it did not seek to relist the Polaris Light product in the Second Supplemental Disclosure filed on March 8, 2013.   Although LMT presents arguments suggesting that it believes the Polaris Light and Magena Star product are one in the same, or at least substantially similar, these arguments do not provide the requisite good cause required by our local patent rules to explain why LMT removed the Polaris Light from its infringement contentions in the first place in January 2013, and decided not to seek amendment until July 2013.   *See* L. Pat. R. 3.7.   Put differently, LMT specifically identified the Polaris

---

[6]      To be sure, the Magena Star product itself is public, as evidenced by LMT's investigation of the product.   What LMT describes as the non-public information supporting a finding of good cause, with which this Court agrees, is that the Magena Star is either manufactured by Home Tops and/or manufactured and assembled by a third-party from materials provided by Home Tops, sufficient to support a claim of indirect infringement.   *See, e.g.*, Kinkade Decl., ¶¶ 7, 10.

[7]      Home Tops does not appear to dispute the accuracy of these facts or procedural developments, only whether LMT acted diligently under these circumstances.

Light in its Complaint and Original Disclosure of infringement contentions but then removed the Polaris Light from subsequent infringement contentions; the fact that LMT later discovered information relating to the Magena Star product does not provide good cause to explain LMT's decision to eliminate the Polaris Light from its previous filings and why it did not move sooner to correct that omission.[8]   Indeed, it cannot be that LMT is adding the Polaris Light at this time solely because of the Magena Star product since it would not be necessary to separately add the Polaris Light if it is indeed part of the Magena Star product.   And if that is not the case, then LMT has failed to explain its belated inclusion of the Polaris Light in its infringement contentions.   Accordingly, I deny without prejudice LMT's motion to include the Polaris Light in its amended infringement contentions.

On the other hand, I find that in light of these facts, LMT's motion to amend was diligently filed with respect to the Magena Star product.   First, although four months is not an insignificant delay, it is not as long as the lengthy delays that other courts considering the same issue have found to be unreasonable.   *Compare TFH Pubs., Inc.*, 705 F. Supp. 2d at 367 (collecting cases holding that a delay of several weeks up to a few months is not "an inordinate amount of time to give notice of one's intent to amend its infringement contentions") *with Astrazeneca AB*, 2013 WL 1145359, at *4 (finding seven month delay to be unreasonable where there were no circumstances justifying delay); *Janssen Prods., L.P. v. Lupin Ltd.*, Civ. No. 10-5954-WHW-SCM, 2013 WL1966051, at *5 (finding delay of six months to a year to be

---

8       I note that although LMT's contends that the Polaris Light and the Magena Star product are identical or virtually, Home Tops rejects such a characterization and argues that in no way is its Polaris Light resold or repackaged as the Magena Star product.   *See* Declaration of Geoff Hale, President of Home Tops, attached to Home Tops Opp. to LMT's Mot. to Further Amend, Dkt. No. 50.   I need not resolve this dispute at this juncture.

unreasonable where party proffered no reason for delay).[9]   Second, LMT and Home Tops were in regular communication during the March to July 2013 period, including LMT notifying Home Tops in March of its belief that the Magena Star product was infringing.   Given that actual fact discovery did not commence until April 2013, and that the parties were engaged in mediation proceedings, I find that LMT's decision to file the instant motion for leave to further supplement its infringement contentions in July 2013 with respect to the Magena Star product to be timely. The fact that LMT's motion followed Home Tops' motion for partial summary judgment on the same issue by a few weeks is immaterial; indeed, LMT's motion was filed the same day as its timely filed opposition to Home Tops' motion.   It bears repeating that at the time LMT filed its motion, fact discovery had only recently begun, and is not scheduled to conclude until April 2014; thus this is not a situation where an amendment would be considered untimely because it was filed after discovery had closed.   *See O2 Micro Int'l v. Monolithic Power Sys.*, 567 F.3d 1355 (Fed. Cir. 2006).   Accordingly, I find that LMT acted diligently in filing its motion for leave to further supplement its infringement contentions with respect to the Magena Star product only.

The next step in my analysis is to determine whether granting LMT's motion would cause Home Tops to suffer undue prejudice.   In that connection, the only specific prejudice identified by Home Tops in its briefing is that because Home Tops does not actually manufacture the Magena Star product, but only provides "raw materials" to a third-party, Diggers Specialty, allowing LMT to amend would further require Diggers Specialty to be joined as a party and

---

[9]     Additionally, *Astrazenexa AB* and *Janssen Prods.* were Hatch-Waxman patent cases, which require the "ultra early disclosure of infringement and invalidity contentions" under the Local Patent Rules.   *See Sanofi-Aventis v. Barr Labs., Inc.*, 598 F. Supp. 2d 632, 637 (D.N.J. 2009).   The instant patent infringement case does not carry with it the same "ultra early" disclosure standard.

would "likely require further *Markman* discovery and briefing." To begin, it is not true that Diggers Specialty would necessarily be required to be added to this case; LMT's position is that it would pursue claims arising out of the Magena Star product against Home Tops on a theory of indirect infringement. Under such a theory, LMT would not be required to join Diggers Specialty. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274-76 (Fed. Cir. 2004) (explain that showing of indirect infringement only requires showing that indirect infringers instrumentality had no commercial non-infringing use and that indirect infringer satisfy know this).

Furthermore, I fail to see how allowing LMT to amend its infringement contentions to include the Magena Star product would affect the *Markman* proceeding. Nothing in the parties' current claim construction briefing or arguments pertains to any specific accused instrumentality of Home Tops or Maine, and Home Tops offers no explanation why including these additional accused instrumentalities would alter this fact. Indeed, under Federal Circuit law, it generally would be inappropriate for Home Tops to make arguments during the claim construction proceeding relating to any specific accused instrumentality. *See SRI Int'l v. Matsushita Elec. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc). Finally, I note again that fact discovery remains open, the claim construction portion of this case has just been resolved, and the parties have recently filed a stipulated extension for the submission of expert reports. In other words, the proceedings in this case are ongoing and substantial. For these reason, I reject Home Tops' unsubstantiated assertion that allowing LMT to narrowly amend its infringement contentions to include the Magena Star product as an additional accused instrumentality would unduly prejudice Home Tops.

In sum, I find that for the Magena Star product, LMT timely filed its motion for leave to

further supplement its infringement contentions, has shown good cause for doing so on the basis of newly discovered, non-public information, and Home Tops would not be unduly prejudiced by such an amendment. Accordingly, the Court grants LMT's motion with respect to the Magena Star and similar products only; the Court denies without prejudice LMT's request to include the Polaris Light in its amended infringement contentions.

## C.    Home Tops' and Maine's Motion on Intervening Rights

Both Home Tops and Maine move for partial summary judgment under the doctrine of intervening rights, arguing that the reexamination proceedings for the '637 Patent substantively changed the claims of the patent on which LMT bases its infringement contentions. On that basis, Defendants contend that they are entitled to absolute intervening rights, precluding any award of damages for Defendants' actions prior to the August 28, 2013 issuance of the '637 Patent reexamination certificate. Maine further claims that it is additionally entitled to equitable intervening rights based on its substantial investment and development of its accused products, limiting any potential damages in this case to those products not existing in Maine's inventory as of August 28, 2013. LMT opposes these motions, arguing that the reexamined and amended claims are substantially identical to the previous claims, and thus the application of the intervening rights doctrine is inappropriate.[10] The parties largely do not dispute the facts related to these motions, which turn primarily on a legal determination; however, LMT does

_____

[10]    LMT further opposes Defendants' intervening rights motions on the grounds that they are premature because this Court has yet to issue a *Markman* decision construing the disputed claim terms in the '637 Patent. I find this argument to be mooted. I am issuing my *Markman* decision concurrently with this instant Opinion, and, in any event, I find the record regarding the '637 Patent, the prosecution history, and reexamination proceeding to be adequately developed at this stage to allow me to properly render a decision on Defendants' motions. *Cf. Artemi Ltd. v. Safe-Strap Co., Inc.*, 947 F.Supp.2d 473, 480 (D.N.J. 2013) (holding improper to rule on intervening rights "without any factual record upon which to make a ruling" because "intervening rights is a highly fact-specific inquiry").

dispute whether Maine has substantially prepared for and invested in the development and production of the accused products such that it is entitled to equitable intervening rights.

"The doctrine of intervening rights first developed as courts recognized that permitting substantive changes to the scope of patent claims through post-issuance procedures left the door [] open for gross injustice where a third party, having already begun to make, use, or sell a given article, finds its previously lawful activities rendered newly infringing under a modified patent." *See Marine Polymer Technologies, Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1361-62 (Fed. Cir. 2012) (internal quotation marks omitted.).   The concept of intervening rights was first codified with respect to reissued patents, and has since been extended to reexamined patents under 35 U.S.C. § 307(b), which provides:

> Any proposed amended or new claim determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252 of this title for reissued patents on the right of any person who made, purchased, or used within the United States, or imported into the United States, anything patented by such proposed amended or new claim, or who made substantial preparation for the same, prior to issuance of a certificate under the provisions of subsection (a) of this section.

35 U.S.C. § 307(b).   Thus, only "amended" or "new" claims in a reexamined patent give rise to the defense of intervening rights.   *Id.*

As noted, patent law provides for two types of intervening rights: (1) "absolute intervening rights," which sever liability for an infringer for accused products that were made or used before the reexamination certificate issue; and (2) "equitable intervening rights," where a court, in its equitable discretion, may provide for a party to continue to engage in infringing activities—*e.g.*, to continue to make or use products—after the reexamination certification has issued if the accused infringer made substantial preparations for the infringing activities prior to the reexamination. *See* 35 U.S.C. §§ 252, 307; *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1339 (Fed.

Cir. 2013). After determining that the claim upon which the intervening rights are premised is new or has been amended, *see Marine Polymer Technologies, Inc.*, 672 F.3d at 1361-62, the Court must determine whether the accused product or activity infringes on a claim that remains "without substantive change" after the reexamination; if the claim has not been substantively changed, the doctrine of intervening rights does not apply. *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 827-28 (Fed. Cir. 1984); *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997) ("Unless a claim granted or confirmed upon reexamination is identical to an original claim, the patent can not be enforced against infringing activity that occurred before issuance of the reexamination certificate."); *see also Kaufman Co. v. Lantech, Inc.,* 807 F.2d 970, 975-77 (Fed. Cir. 1986) (explaining the relationship between §§ 252 and 307(b) and holding that "identical," as used in § 252, means "without substantive change" under § 307(b)). There is no dispute among the parties that Defendants' intervening rights defense is based off of claims that have been amended in the reexamination proceeding, thus I proceed to determining whether these claims were amended without substantive change thereby precluding application of the defense.

"To determine whether a claim change is substantive it is necessary to analyze the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998) (internal quotation marks omitted). Like with claim construction, these reexamined claims "are not to be interpreted by adding limitations appearing only in the specification." *Electro Med. Sys. v. Cooper Life Sciences, Inc.,* 34 F.3d 1048, 1054 (Fed. Cir. 1994). Overall, the focus is on whether the amended claims are of a "different scope" than the original claims. *Laitram Corp.*, 163 F.3d at 1348.

Here, the parties agree that each of the amended claims on which LMT bases its allegations of infringement were amended to include the following changes: (1) "slidably engaging" was amended to "axially sliadably engaging"; and (2) the language "dimensioned to provide resistance to removal" was inserted. It is Defendants' contention that these changes are substantive and that they narrowed the scope of the original claims, whereas LMT argues that these changes merely clarified limitations that were always present in the claims.

As I explain in detail in my *Markman* Opinion, issued concurrently with this decision, during the reexamination proceeding, LMT amended the claim language to read "axially slidably engaging" after the USPTO Examiner rejected previous language as not sufficiently distinguishing the '637 Patent over prior art. *See Markman* Opinion, January 16, 2014 (hereinafter "*Markman* Op."), 24 ("Accordingly to LMT, the claim term was amended from "slidably engaging" to "axially slidably engaging" to distinguish the '637 Patent over the prior art of Frost, which provides for a light that attached with a screw onto the top of a post."). Only after LMT made this change was the USPTO Examiner satisfied with this claim term. In that connection, other courts have found that changes made in the reexamination process to avoid anticipation by specific prior art are properly considered substantive changes, supporting an intervening rights defense. *E.g.*, *Laitram Corp.*, 163 F.3d at 1348 ("[I]t is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment.").

Additionally, I have already construed the claim term "axially slidably engaging" to give specific meaning to each word in the term. *See Markman* Op. at 22 ("[T]he Court adopts Defendants' proposed construction that "axially" in the term "axially slidably engaging" means that the claimed post cap apparatus is placed on the fence post downwardly along the

longitudinal axis of the post."); *id.* at 26 ("LMT's proposed construction, 'able to contact and slide,' aligns with the specification and prosecution history, which show that the common and ordinary use of the term 'slidably' applies and is intended to refer only to the type of engaging movement between the post cap and post, and not to the dimensions of either."). Given that the original claim language only recited "slidably engaging," and that I have found that "axially" has a meaning independent from "slidably," I disagree with LMT that the reexamination changes were merely clarifying and not substantive. Rather, I find that "axially slidably engaging" is a narrower limitation than "slidably" engaging, and thus the reexamination proceeding substantively changed the scope of the '637 Patent.

In that regard, I reject LMT's argument that the original specification contained sufficient description to import the term "axially" into the original claims. First, the word "axially" itself is not found anywhere in the original specification. Second, although the specification describes "tabs" or "continuous walls" that serve as an engaging means to connect the post cap to the post, there simply is nothing that requires the post cap to be placed onto the post "axially," *i.e.*, downwardly along the longitudinal axis of the post. At most, the specification sets forth several preferred embodiments that could be engaged in an axial manner. But as I repeatedly stated in my *Markman* Opinion, the '637 Patent is not limited to the preferred embodiments, and thus the limitations in the specification should not be imported into the claim terms. *Id.* at 37 (citing *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1348 (Fed. Cir. 2008) ("[W]hen claim language is broader than the preferred embodiment, it is well settled that claims are not to be confined to that embodiment.")). I similarly find it inappropriate to import the limitation "axially" from the specification into the original claim terms as LMT proposes. *Electro Med. Sys.*, 34 F.3d at 1054.

In addition to the foregoing change, I also find that the amended language "dimensioned to provide resistance to removal" in the reexamination certificate narrowed the original claim language and thus constitutes a substantive change to the '673 Patent.   Again, LMT argues that this amendment merely clarifies what was implicit in the original claim language, as supported by the specification's description that in one embodiment, the engaging means (*e.g.*, tabs) "will be constructed such that they . . . provide some resistance to removal."   *See* LMT Opp. to Maine's Partial Mot. for Sum. Judg., Dkt. No. 77, 11 (quoting '637 Patent, Col. 4, lines 48-50).

LMT's argument fails for the same reason as before: LMT is improperly trying to import a limitation into the claims based on the description of a specific preferred embodiment.   *See Laitram Corp.*, 163 F.3d at 1347 (explaining that the inquiry into whether a specific change is substantive is "is circumscribed by the well-established principle that a court may not import limitations from the written description into the claims").   Prior to the reexamination amendment, none of the original claims contained the language "dimensioned to provide resistance to removal," and nothing in the '637 Patent indicates that the claims should be limited to any specific preferred embodiment.   Thus, in construing the original '637 Patent claims, I find no basis to import the limitation of "dimensioned to provide resistance to removal" that LMT argues was already implicit in the claim language.   Because the amended claims following the reexamination proceeding each recite such a limitation, however, I find that the amended claim language narrowed the scope of the claims and, as such, represents a substantive change to those claims in the '637 Patent.   Accordingly, I find that Defendants are also entitled to intervening rights on this changed claim language.

Having concluded that the reexamination proceeding inserted substantive changes into the claims relied on LMT in their infringement law suit, I further conclude that both Home Tops

and Maine are entitled to the defense of absolute intervening rights. Should Home Tops or Maine ultimately be found to have infringed on the '637 Patent, LMT will be limited to damages arising from Defendants' conduct only after the issuance of the reexamination certificate of the '637 Patent on August 28, 2012.

Whether Maine is also entitled to equitable intervening rights in the form proposed by Maine—to be able to sell its accused products that were in its inventory as of August 28, 2013 free from liability for damages—requires further consideration. As briefly noted above, equitable intervening rights permit a court, in its discretion, to fashion a remedy allowing an infringing party to engage in certain infringing activities even after the patent in question has been reexamined. *See Fresenius USA, Inc.*, 721 F.3d at 1339. In weighing whether the equities support any such award, courts have considered the following factors: whether the infringer was aware of the existence of the patent in question; whether the infringer sought and obtained the advice of counsel regarding the patent; whether the infringer attempted to design around the patent; the amount of time and money the infringer expended in researching and developing its product; the amount of inventory of the infringing product currently remaining; and the consequences the infringer would suffer if they were unable to continue selling their product.[11] *See Seattle Box Co.*, 756 F.2d at 1580-81 (collecting cases).

Here, Maine argues that it is entitled to equitable intervening rights allowing it to have sold and/or continue to sell its inventory of any product found to be infringing that existed as of August

---

[11] Because the award of equitable intervening rights that Maine seeks rests, naturally, entirely on the Court's equitable determination, it is proper for the Court, rather than a jury, to make factual findings in this regard. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1373 (Fed. Cir. 2009) ("While provided by a statutory provision, this prong of the intervening rights is entirely equitable in nature. As such, issues of fact underlying the equitable intervening rights are matters for court, not jury disposition.").

28, 2013. In support, Maine submits an affidavit from John Teller, who describes himself as a regional general manager of Maine, responsible for overseeing the purchasing of Maine products. *See* Aff. John Teller, Dkt. No. 67, ¶ 2. In his affidavit, Teller states that Maine had developed the allegedly infringing post caps in 2004 and that one of the Maine entities has owned the post caps since 2005, but provides no details regarding the amount of time or money expended on developing or acquiring the post caps. *Id.* at ¶¶ 3-4. Teller then explains that after learning of problems with its post caps staying attached to fence posts, Maine researched and developed a product called "VersaCaps," which were designed to secure the post cap to the post and were sold with the post cap product. *Id.* at ¶¶ 5-8. Again, no specific details are given of how much time or money were expended by Maine in developing and manufacturing the VersaCaps; Teller only states that Maine spent a "great deal of money" related to the VersaCaps. *Id.* at ¶ 10. In sum, Teller states in his affidavit that between June 2005 and December 2012, Maine "generated millions of dollars in the sales of the accused post caps," that the "accused post cap product is one of [Maine's] core products," and "depriving Maine . . . of the continued opportunity to sell this product would place extreme hardship and undue burden" on Maine. *Id.* at ¶¶ 9-10.

LMT disputes several of these facts, and relies on deposition testimony provided by Teller. Specifically, LMT points out that Maine knew of the '637 Patent since at least 2005; however, Teller provided no testimony that Maine (1) conducted a patent claim analysis of the '637 Patent, (2) obtained advice from an attorney regarding the '637 Patent, or (3) attempted to design around the '637 Patent. *See* Teller Dep., T17:8-18, T18:1-11, T72:7-10.[12] Instead, Teller testified that Maine proceeded with selling its products based on its own belief that the products would not

---

[12] The Teller Deposition, dated August 8, 2013, is attached as Exhibit A to the Declaration of Christopher R. Kinkade, submitted with LMT's opposition to Maine's partial motion for summary judgment on the issue of intervening rights. *See* Dkt. No. 77-2.

infringe on the '637 Patent. *Id.* at T17:8-18. LMT further relies on Teller's deposition testimony that Maine's initial post cap product design development cost approximately $75,000 for the first product and then $10,000-$12,000 for each subsequent product, and that the VersaCap cost approximated $60,000 in total to develop. *See id.* at T54:9-55:12, T53:4-25. Lastly, LMT cites Teller's deposition testimony that (1) sales of the accused post cap account for less than half of the business of Maine (including "a very, very minor part" for the entities Universal Consumer Products, Inc., and Universal Forest Products, Inc.); and (2) Maine would not be put out of business and would unlikely be required to lay off employees if prevented from selling the accused post caps. *Id.* at T69:3-14, T70:23-71:3.

I find that, on this record, Maine is not entitled to equitable intervening rights with respect to the continued sale of its inventory that was in existence as of August 28, 2012. Although the record shows that Maine expended more than minimal time, effort, and money into the development of its products, the equities as a whole do not support awarding Maine additional intervening rights. Teller's deposition testimony demonstrates that Maine was aware of the '637 Patent early on in the development and/or sale of its products, but did virtually nothing to determine whether its products could be considered to infringe on the '637 Patent. These actions weigh against awarding Maine equitable intervening rights. *See Seattle Box Co.*, 756 F.2d at 1580; *Bendix Commercial Vehicle, Sys. LLC v. Haldex Brake Prods. Corp.*, 737 F. Supp. 2d 854, 858 (N.D. Ohio 2010) ("Investments made when a defendant was fully cognizant at all times of the questionable legal status of [its] conduct do not lend credence to a later request for equitable intervening rights." (Internal quotation marks omitted.)).

Similarly, Teller's deposition testimony shows that while Maine could suffer some losses from being unable to sell its remaining inventory, these losses would not undermine Maine's

business as a whole and possibly would not even affect its employees. Indeed, Maine has not even shown that it has any existing orders for its inventory. *Cf. Seattle Box Co.*, 756 F.3d at 1581 (finding fact that infringer had existing orders for its infringing product inventory to support award of equitable intervening rights). In that connection, Maine expended a relatively small amount of expense in developing its products—in the tens of thousands of dollars—but has enjoyed a substantial period of time to sell its products—with tens of millions of dollars in sales. Because I have found that Maine is entitled to absolute intervening rights for the sales of its products before August 28, 2012, none of the money that Maine earned before that date will be recouped by LMT in damages should LMT be able to prove that Maine is infringing on the '637 Patent. Given the large discrepancy between the cost of development and manufacture and the amount of sales provided by Maine for its products, it would appear that Maine has long since recouped its development costs, which weighs against granting Maine the equitable intervening right to continue to sell its inventory. *Univ. of Virginia Patent Found. v. Gen. Elec. Co.*, 792 F. Supp. 2d 904, 918 (W.D. Va. 2011) ("An equitable intervening right to continue to sell the software applications would not be necessary for the protection of investments made before the issuance of the reexamined patent if the investments have long since been recouped."). Overall, I find that, should any of Maine's accused products be found to be infringing in this case, granting Maine the right to sell its inventory of these products as it existed as of August 28, 2012 would be inequitable.

In sum, I find that the amended claims of the '637 Patent that resulted from its reexamination support granting Maine and Home Tops absolute intervening rights should either of the Defendants be found to have infringed on the '637 Patent, preventing LMT from obtaining damages against these Defendants for any actions occurring before the issuance of the reexamination certificate on August 28, 2012. I find further that, after balancing the equities,

Maine would not be entitled to equitable intervening rights allowing it to continue the sale of its inventory after August 28, 2012, of any product that may be ultimately found to be infringing.

## IV.    CONCLUSION

For the reasons stated above, the Court (1) grants Home Tops' motion for partial summary judgment on the defense of absolute intervening rights; (2) grants Maine's motion for partial summary judgment on the defense of absolute intervening rights and denies Maine's request for equitable intervening rights; (3) denies Home Tops' motion for partial summary judgment that LMT waived any infringement contentions with respect to the Magena Star products; and (4) grants LMT's motion for leave to further supplement its infringement contentions to include the Magena Star and similar products.    An appropriate order shall follow.


Dated:        January 16, 2014

/s/ Freda L. Wolfson
FREDA L. WOLFSON, U.S.D.J.